**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFERY SACKS,<br><br>  Petitioner,<br><br>  v.<br><br>CEO &/OR OFFICE OF THE WARDEN,<br><br>  Respondent. | Civil Action No. 22-4623 (KMW)<br><br>**OPINION** |

**WILLIAMS**, District Judge:

This matter comes before the Court no the habeas petition (ECF No. 1) filed by Petitioner Jeffrey Sacks, seeking to challenge a prison disciplinary sanction. Following an order to answer, the Government responded to the petition (ECF No. 8), and Petitioner replied (ECF No. 10). For the following reasons, the petition is denied.

**I.    BACKGROUND**

Petitioner is a convicted federal prisoner currently imprisoned in FCI Morgantown, in Morgantown, West Virginia. (ECF No. 12.) In his current habeas petition, Petitioner seeks to challenge disciplinary proceedings that took place during his incarceration at the satellite prison camp of the United States Penitentiary in Marion, Illinois ("USP Marion").[1]  (See ECF No. 1.)

---

[1] It appears that the underlying events of this case occurred at USP Marion, but Petitioner did not file the instant Petition until after his transfer to FCI Fort Dix, in Fort Dix, New Jersey. (ECF No. 1.)  After Petitioner filed the instant Petition, it appears he was again transferred to FCI Morgantown, in Morgantown, West Virginia. (ECF No. 12.)

1

The incident report charged Petitioner with a violation of Bureau of Prisons ("BOP") Code 110,[2] and describes the incident as follows:

> On June 30, 2021, at 8:30 a.m., Inmate Sacks, Jeffrey, Reg. No. 17526-028, was requested to provide a urine sample within a 2 hour time period. Inmate Sacks was given a direct order at 10:30 a.m. that his 2 hour window to provide a urine sample was over and he must provide a urine sample at that time or he is refusing to provide a urine sample. Inmate Sacks refused to provide a urine sample at that time.

(ECF No. 8-4 at 16.) Later that day, S. Hendricksen provided Petitioner with a copy of the incident report. (*Id.*) Petitioner informed the prison's disciplinary committee that officers told the inmates that they had until 3:00 p.m. to provide a urine sample, but Petitioner did not receive his two hours to urinate and was not told when his two hours started. (*Id.* at 17.) Petitioner also told the committee that he tried to urinate but could not because of the medication he was on. (*Id.*) Because of the severity of the infraction, the prison's disciplinary committee ultimately referred the matter to a disciplinary hearing officer ("DHO") for a hearing prior to disposition. (*Id.*)

On July 6, 2021, Petitioner was advised of the upcoming hearing, provided a statement of his rights in relation to the hearing,[3] and was given the opportunity to request a staff representative and witnesses for the hearing. (*Id.* at 10-11.) Petitioner requested staff representative, P.A. Richardson, and witnesses, Jeremy Henry and Terry Golden, who Petitioner stated would testify that Petitioner does not do drugs. (*Id.* at 11.)

---

[2] Code 110 prohibits: "Refusing to provide a urine sample; refusing to breath into a Breathalyzer; refusing to take part in other drug-abuse testing." 28 C.F.R. § 541.3 (Table 1).

[3] Specifically, he was advised of his rights to advance notice of the charges, the right to a representative, the right to call witnesses provided it did not interfere with institutional security, the right to make a statement or remain silent, the right to be present for the hearing, the right to be advised of the DHO's decision, including a statement of the reasons for the decision, and the right to appeal. (*See* ECF No. 8-4 at 11.)

On July 7, 2021, P.A. Richardson declined to serve as a staff representative for Petitioner at the disciplinary hearing. (*Id.* at 12.) P.A. Richardson noted on the form that medical staff was not needed for Petitioner to assert a medical defense claim. (*Id.*) On August 9, 2021, Petitioner signed a waiver of appearance form, in the presence of a staff witness, indicating he did not wish to appear for his hearing before the DHO. (*Id.* at 7.) In lieu of appearing, Petitioner submitted a written statement on his behalf. (*Id.* at 8.)

Petitioner's disciplinary hearing was held on August 11, 2021, before DHO Giconi. (*Id.* a 3-6.) Petitioner waived his right to a staff representative. (*Id.* at 3.) The DHO noted that Petitioner had originally requested staff representative, P.A. Richardson, however, P.A. Richardson declined, and Petitioner declined to provide another staff representative. (*Id.* at 4.) The DHO considered Petitioner's statement during the preliminary investigation that officers told him he had until 3:00 p.m. to give a urine sample, he did not receive his two hours to urinate, he was not told when his two hours started, and he tried to urinate but could not because of the medication he was on. (*Id.* at 5.) The DHO considered the written statement Petitioner provided in lieu of appearing at the hearing. (*Id.*) In his written statement, Petitioner stated that he was 65 years old, he was taking prostate medicine, and he had already urinated twice the morning of the day at issue. (*Id.* at 8.) Petitioner stated that he was also on allergy medication and the label indicates it should not be taken if the individual has an enlarged prostate. (*Id.*) In addition to Petitioner's statement, the DHO considered the statements of Petitioner's witnesses, Henry and Golden. (*Id.* at 4.) Witness Henry stated:

> This is regarding a fellow inmate by the last name of Sacks. He was a cubemate of mine and to my knowledge he never used any drugs other than his prescribed meds. He never ever spoke about doing them.

(*Id.* at 14.)

Witness Golden stated:

> I have never seen or heard of [Petitioner] ever doing drugs. I also know he has trouble going to the bathroom. They also told us we had until 3:00 to fill the cup and then gave until 10:30 to get out.

(*Id.* at 15.)

Finally, the DHO considered the reporting officers' written statement in the incident report, the DHO chain of custody form, the fact that Petitioner did not present any documentary evidence in his defense, Petitioner's statement to the prison's disciplinary committee, and a memorandum written by Nurse Practitioner J. Richardson, who reported that:

> Inmate Sacks 17526-028 is diagnosed with Benign Prostatic Hyperplasia (BPH) which is characterized by symptoms excessive nighttime urination, frequent urination, frequent urge to urinate, and incomplete bladder emptying. For this condition he is prescribed tamsulosin, which relaxes the urinary muscles to help him urinate more easily. In summary, he has a condition which causes the bladder to always have urine causing frequent urination and takes a medication that makes it easier for him to urinate. In my professional opinion, he should have easily been able to provide urine sample within the allotted time frame.

(*Id.* at 5, 13.)

Considering that above evidence, the DHO found that Petitioner committed the prohibited act of Refusing to Provide a Urine Sample or Breath Test, Code 110. (*Id.* at 5.) Petitioner was therefore sanctioned with (1) a 41-day loss of good conduct time, (2) 7 days of disciplinary segregation, and (3) loss of email and visitation privileges for 120 days. (*Id.* at 6.)

On September 27, 2021, Petitioner appealed the decision of the DHO.[4] (*See* ECF No. 8-2 at 10.) On October 5, 2021, in case number 1093520-A2, the North Central Regional Office

---

[4] Petitioner had previously submitted an appeal on September 7, 2021. However, that appeal was rejected because Petitioner did not submit a complete copy of the DHO report at issue in the appeal. (*See* ECF No. 8-2 at 10.)

("NCRO") issued a remand of Petitioner's disciplinary action due to a procedural error. (*See* ECF No. 8-3, ¶ 8; *see also* ECF No. 8-2 at 16.)

On October 28, 2021, Petitioner was again advised of his rights before the DHO and signed an Inmate Rights at Discipline Hearing form. (ECF No. 8-4 at 22, 26.) Petitioner also received a Notice of Discipline Hearing Before the DHO form, where he elected to have staff representative "Shaw" present, and to call inmates Golden, Henry, Keith Estep, and Matt Huffman as witnesses. (*Id.* at 27.)

On November 1, 2021, Petitioner had disciplinary rehearing before DHO Wallace. (*Id.* at 22-25.) The DHO noted that Petitioner's requested staff representative, D. Shaw, appeared and requested video evidence. (*Id.* at 22.) However, the DHO noted that there was no video. (*Id.*) The staff representative provided a statement that "there was no evidence to support that he was not given the test until 0915" and "he was on allergy med that states in the warnings causes enlarged prostate." (*Id.*) Petitioner provided the following statement:

> I realize how serious this was. I was not able to make a comment at the time of the incident. I was not able to provide a urine sample because I had peed three times that morning. I did not sta[r]t my test until 0915.

(*Id.*) The DHO also noted that Petitioner provided a written statement. (*Id.*) The DHO again considered the original incident report, the DHO chain of custody form, the above cited Medical Memorandum of Nurse Practitioner J. Richardson, and the above cited statements of witnesses Henry and Golden. (*Id.* at 23-24.) Additionally, the DHO considered that statement of staff representative Shaw and new witnesses Huffman and Estep. (*Id.* at 24.) Witness Estep stated that:

> The inmates were told we would have until 3:00 p.m. to provide a urine sample. Then they changed it and told the inmates anyone that could not provide the urine sample by a[n] earlier time around 10:00 a.m. or 11:00 a.m. would be taken to the SHU. I interacted with [Petitioner] daily. I was in quarantine with him when he got here.

5

> I'm sure he was not using drugs. He just had trouble providing the sample.

(*Id.* at 32.) Witness Huffman stated that:

> We w[]ere all told to meet in the gym upon being all accounted for C/O Snyder said everyone in this gym produce a urine sample, you have until 3 p.m. to do so. If not produced [] by 3 p.m. you will be loaded up in a van and taken to the SHU. I met [Petitioner] here. I talked and hung out with him on a daily basis as well as volunteered to work at weed and seed with him on my days off from welding shop. I honest[ly] believe [Petitioner] was not under the influence of any substance since turning hi[m]self in here at Marion.

(*Id.* at 33.) Based on the evidence, then DHO found that Petitioner committed the prohibited act of Refusing to Provide a Urine Sample or Breath Test, Code 110. (*Id.* at 24.) The DHO imposed the same sanctions previously imposed. (*Id.* at 25.)

The DHO stated that refusing to take part in drug screening, when requested to do so, creates an inability of staff to implement the established drug screening policy, which provides for an orderly operation where inmates and staff can live and work in a safe environment. (*Id.*) The DHO further stated that refusing to provide a urine sample for testing is considered the equivalent of receiving a positive test and hampers the staff's ability to deter the use of drugs. (*Id.*)

On January 24, 2022, Petitioner appealed the NCRO's decision in case number 1093520-A2 to the Bureau of Prison's ("BOP") Central Office. (ECF No. 8-3, ¶ 10.) On April 19, 2022, the BOP's Central Office provided an informational response to his appeal, explaining that:

> Our review of your appeal revealed the Regional Director remanded the incident report. Your rehearing was conducted on November 1, 2021, where the charge was upheld. As was explained in the Regional Director's response, if you disagreed with the rehearing decision, you may re-submit your appeal to the appropriate level, in this case the Regional Level. If you disagree with the findings of the rehearing, you must submit your appeal to the Regional Director. You will need to provide a staff memorandum explaining the delay in filing.

> Based on the foregoing, this response is provided for informational purposes.

(ECF No. 8-2 at 30.)

## II.   **LEGAL STANDARD**

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

This Court has subject matter jurisdiction under § 2241 to consider the Petition because Petitioner challenges the loss of good conduct time on constitutional grounds, and he was incarcerated in New Jersey at the time he filed the Petition. *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 242–44 (3d Cir. 2005).

## III.   **DISCUSSION**

In his habeas petition, Petitioner appears to argue that he did not receive due process throughout the disciplinary process. (ECF No. 1 at 23-27.) Additionally, throughout his petition, Petitioner appears to argue that the DHO violated his due process rights because the DHO found him guilty without sufficient evidence and he is innocent of the charge against him. (*See generally id.*)

Because federal prisoners have a statutorily created liberty interest in good time credits they receive during their imprisonment, prisoners do have Due Process rights which may not be impugned during prison disciplinary hearings resulting in the loss of such credits. *Campbell v. Warden Allenwood USP*, 808 F. App'x 70, 72 (3d Cir. 2020) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)). Those rights include at least twenty-four hours advance written notice of the

7

charges, an opportunity to call witnesses and present documentary evidence, assistance from an inmate representative if the charges are complex or if the petitioner illiterate, and a written decision explaining the evidence relied upon and the reasons for the disciplinary action. *Id.*; *See also Wolff*, 418 U.S. at 563-67. Technical errors, such as failure to meet procedures, will not provide a basis for habeas relief, and any alleged denial of Due Process will not suffice to overturn a disciplinary proceeding unless those errors were, in fact, prejudicial. *See Millhouse v. Bledsoe*, 458 F. App'x 200, 203 (3d Cir. 2012) (citing *Wilson v. Ashcroft*, 350 F.3d 377, 380-81 (3d Cir. 2003); *see also Obiegu v. Werlinger*, 488 F. App'x 585, 586 (3d Cir. 2012).

Additionally, in order to comport with due process, there must be "some evidence in the record" to support a disciplinary officer's findings and decision to revoke good time credits. *Gonzalez v. Hollingsworth*, No. 15-2993, 2016 WL 1732376, at *2 (D.N.J. May 2, 2016) (quoting *Denny v. Schultz*, 708 F.3d 140, 144 (3d Cir. 2013)). The "some evidence" standard is one of appellate review and is not the same as the "burden of proof in a prison disciplinary proceeding." *Id.*

Indeed, the "some evidence" standard is "minimal and does not require examination of the entire record, an independent assessment of the credibility of the witnesses, or a weighing of the evidence." *Lang v. Sauers*, 529 F. App'x 121, 123 (3d Cir. 2013) (citing *Thompson v. Owens*, 889 F.2d 500, 502 (3d Cir. 1989)). Instead, "the relevant inquiry asks whether 'there is any evidence in the record that could support'" the disciplinary official's conclusion. *Id.* (quoting *Superintendent v. Hill*, 472 U.S. 445, 455–56 (1985)).

### A. Due Process in the Disciplinary Proceeding

Petitioner appears to argue that he was denied due process because he was not provided with all of the required procedural safeguards. Petitioner claims that he was never asked for

witnesses and that he was never told that the DHO considered written statements from witnesses Huffman and Estep. (ECF No. 1 at 25.) Petitioner alleges that he asked for staff representative RN Harbison for his first hearing and was not given the opportunity to obtain a different representative. (*Id.* at 24.) Petitioner also alleges that PA Richardson was a "stranger" to him and should not have been permitted to provide a medical statement to the DHO. (*Id.* at 26.) Petitioner also claims that the DHO report is a "false writing, a false record, a phony and a fraud." (*Id.* at 23.)

Here, Petitioner received all of the required procedural rights required by *Wolff*. Petitioner received written notice of the charges against him the same day the incident report was written. (ECF No. 8-4 at 16.) Petitioner was advised of his rights before the DHO and signed an Inmate Rights at Discipline Hearing form. (*Id.* at 22, 26.) Petitioner also received a Notice of Discipline Hearing Before the DHO form, where he elected to have staff representative "Shaw" present, and to call inmates Golden, Henry, Estep, and Huffman as witnesses. (*Id.* at 27.) While Petitioner argues that he did not receive his requested staff representative in his first hearing, Petitioner received that assistance of his requested staff representative in his rehearing. (*Id.* at 22.) He was provided with the opportunity to present evidence in his defense, including statements from four witnesses. (*Id.* at 23.) Finally, the DHO authored a written statement of the evidence that was relied upon and the reasons for the disciplinary actions taken. (*Id.* at 23-25.)

The record shows that Petitioner received due process as required pursuant to *Wolff*. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### B. Sufficiency of the Evidence

Petitioner appears to argue that the weight of the evidence does not support a finding that he committed the prohibited act of refusing a urine sample in violation of Code 110. (*See generally*

9

ECF No. 1.) Petitioner argues that he did not receive due process as he produced evidence to show that he did not refuse to provide the urine sample, rather he was unable to do so in the allotted time because of his medical condition. (*Id.*)

To the extent that Petitioner asks this Court to reweigh the evidence, that is not the duty of this Court. Unlike a DHO hearing, this Court need not decide whether the greater weight of the evidence supports any particular conclusion. Instead, when reviewing a DHO's decision resulting in the loss of good time credits, federal courts will uphold that decision as long as there was "some evidence" to support the DHO's findings and decision. *Hill*, 472 U.S. at 455–56. As mentioned above, the "some evidence" standard is one of appellate review and it is not the same as the "burden of proof in a prison disciplinary proceeding." *Gonzalez*, 2016 WL 1732376, at *2 (quoting *Denny*, 708 F.3d at 144).

The standard is "minimal and does not require examination of the entire record, an independent assessment of the credibility of the witnesses, or a weighing of the evidence." *Lang*, 529 F. App'x at 123 (citing *Thompson*, 889 F.2d at 502). Instead, district courts need only ask whether "there is any evidence in the record that could support" the disciplinary official's conclusion. *Id.* (quoting *Hill*, 472 U.S. at 455–56) (internal quotation marks omitted).

With that minimal standard in mind, there is plainly "some evidence" to support the DHO's findings and decision in this case. The DHO based his findings on the incident report which was noted that prison staff requested Petitioner provide a urine sample within a 2-hour period and at the close of the two hours he was informed that the time frame to submit was ending and Petitioner then refused to submit a urine sample. (ECF No. 8-4 at 23-24.) The DHO also relied on the medical memorandum from PA Richardson which stated that Petitioner is diagnosed with Benign Prostatic Hyperplasia (BPH) which is characterized by symptoms of excessive nighttime urination, frequent

10

urination, frequent urge to urinate, and incomplete bladder emptying. PA Richardson also explained that for his condition Petitioner is prescribed tamsulosin, which relaxes the urinary muscles to help him urinate more easily. Finally, PA Richardson submitted that in his professional opinion, Petitioner should have easily been able to provide a urine sample within the allotted time frame. (*Id.* at 24.) The DHO also considered Petitioner's statement that he did not refuse to provide a urine sample, but rather he was unable to provide one in the time allotted due to his medical condition and medications. (*Id.*) The DHO also considered the written statements of Petitioner's witnesses. (*Id.* at 23-24.)

The DHO's reliance on the incident report and the medical memorandum of PA Richardson is sufficient to meet the "some evidence" standard required to uphold prison disciplinary sanctions. *Hill*, 472 U.S. at 457 (some evidence standard was met where "the record [was] not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.") Accordingly, Petitioner is not entitled to habeas relief on this ground.

## IV. CONCLUSION

For the foregoing reasons, Petitioner's habeas petition (ECF No. 1) is DENIED. An appropriate Order follows.

Dated:

Hon. Karen M. Williams,<br>
United States District Judge